RYMER, Circuit Judge,
dissenting.
I part company for three reasons. First, I do not believe the Nevada Supreme Court’s determination is contrary to, or an unreasonable application of, Bat-son v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor articulated race neutral reasons for his challenges of two African American prospective jurors. The information on Thrower’s jury form was different from his statement on voir dire; he was also unemployed, and the prosecutor figured he would rather be out looking for a job than serving on the jury. The prosecutor said he had several reasons for excusing Martin, who was employed by the postal service, but could only remember that she didn’t seem to understand a question about working for the federal government given her reply that she worked for the “United States.” While in hindsight this may seem picky or, as the majority puts it, inappropriate, the trial judge was in the best position to assess the prosecutor’s credibility in the context of the overall proceeding as well as the manner in which Martin in fact responded, and had no difficulty with the prosecutor’s explanation. Brown’s only offering was that Martin was a grand juror for a year and she “certainly” understood the questions and answers there, but neither the prosecutor nor the court was obliged to accept that “certainty.” The trial judge “did not find any racially motivated reasons the State exercised in their *595 peremptory challenges.” Likewise, the Nevada Supreme Court found no discriminatory intent, and no showing that the explanations were pretextual. The United States Supreme Court has made clear that “the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006). Thus, the Nevada Supreme Court’s determination was not contrary to federal law.
Second, I do not believe it is for us, on habeas review under AEDPA, to fault a state trial court for failing to “consider crucial evidence in the voir dire transcript that undermined the prosecution’s proffered justifications for exercising its preemptory strikes.” There is no law clearly established by the Supreme Court that imposes some kind of sua sponte obligation on a state trial judge to recollect everything in a “transcript” — or, in the more likely event that no transcript was available, to remember every word that had gone before in the voir dire process— and to sift it for “crucial evidence” that might undermine the prosecutor’s explanation, all without any help from the defendant. Nor is it for us to conclude that “[a] careful review of the record before the state court reveals the prosecutor’s justifications to be pretextual.” This simply substitutes our judgment for the state supreme court’s, as if we, too, were sitting in direct review. Thus, the disposition states that “[o]ur own review of the record convinces us that Brown has satisfied his burden of proof under Batson.” However, this is not the question that AEDPA charges us to answer.
Nor does Kesser v. Cambra, 465 F.3d 351, 370 (9th Cir.2006), make it the right question.[1] Even though Kesser conducts a comparative juror analysis for the first time on habeas review, the ultimate question remains whether the state court’s determination that the prosecutor was credible, and his explanation not pretextual, is an unreasonable application of law to the facts. Here, it was not because the findings have support in the record. For example, the prosecutor struck McGuire because he, like Thrower, stated on his jury form that he was single when in fact he had been married for years. While he did not strike Sassone or Southard, who Brown now argues had comprehension problems akin to Martin’s, it is apparent from a complete reading of the voir dire that Sassone did not appear to mistmder-stand but rather to mishear the question,[2] and Southard just needed clarification of what “acquainted” meant in the context of the judge’s question about whether she was acquainted with anyone in law enforcement.[3]
*596 Finally, I do not join in condemning the state trial court and the state supreme court for failing to make “any serious effort to conduct the requisite sensitive inquiry” at step three of the Batson analysis. The sensitivity and seriousness of the inquiry need only be as sensitive and serious as the problem. Here, the state trial judge raised the issue of possible discrimination. The trial court heard from the prosecutor and determined that the dismissals of Martin and Thrower was not racially motivated. Even Brown’s trial counsel stated, “[w]ell, Judge, just to complete the record again. I’m not sure we’re really arguing anything here.... ” The discussion in the Nevada Supreme Court’s order dismissing Brown’s direct appeal. demonstrates that the court reviewed the record and found that Brown had not carried his burden to prove discrimination. As there really was nothing to argue about in this case, the inquiry was sensitive, and serious, enough. In sum, the state courts did not abrogate their affirmative duty to determine whether discrimination occurred. See Rice, 126 S.Ct. at 973-74.
As there is no merit to Brown’s ineffective assistance of counsel claim, I would affirm.

.If Kesser can be read as holding this, then it is even more out of line with clearly established Supreme Court law than I thought. See 465 F.3d at 386 (noting that to conduct a comparative juror analysis without one having been requested or conducted at trial, and without any factual basis to support one, is a far cry from Miller-El v. Cockrell, 537 U.S. 322, 331-34, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), where the Supreme Court endorsed comparative analysis based on testimony, arguments, and findings) (Rymer, J., dissenting).

. When Sassone said she had four children, the court asked "Do for living.” Sassone answered: "Three in California; one in Missouri.” When the court then asked "What do they do for a living?” she responded appropriately. It is obvious in context that she misheard the truncated phrase “do for living" as "living."

. When the trial judge asked Southard if she were "[a]cquainled with anyone in law enforcement,” she responded: "Acquainted? What do you mean by 'acquainted'"? This can reasonably be interpreted as questioning *596 the extent of the relationship the judge had in mind. The court elaborated that it could be socializing with people in law enforcement, or having a neighbor or relative. She then indicated "Volunteers during a election time I met, and that's about it."